IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

FRANCISCO SIERRA, his wife
MILDRED IVONNE CACERES, and
their CONJUGAL PARTNERSHIP,

Plaintiffs

v.                                                              CIVIL 98-1668 (SEC) (JA)

THE MUNICIPALITY OF CAROLINA
and its Mayor, HONORABLE JOSE E.
APONTE, individually and in his official
capacity,

Defendants

## OPINION AND ORDER

Plaintiff Francisco Sierra,[1] former contract employee of the Municipality of Carolina (hereinafter "Sierra"), filed this civil rights suit against the Municipality of Carolina and its mayor, the Honorable José A. Aponte (hereinafter "Aponte"), both in his individual and official capacity. Sierra claims that his yearly contract with the Municipality was not renewed because of his political leanings. Specifically, plaintiff contends that defendants violated his constitutional rights, particularly his Due Process rights and his First Amendment rights, when they failed to renew his yearly service contract.

---

[1] Sierra's wife and children are also plaintiffs in this suit. They have brought forth a supplemental claim under Article 1802 of the Puerto Rico Civil Code.

CIVIL 98-1668 (SEC) (JA)                                        2

Defendants filed a motion for summary judgment (Docket No. 41), which plaintiffs opposed. (Docket No. 53.)

**Standard for Summary Judgment**

Rule 56(c), of the Federal Rules of Civil Procedure, sets forth the standard for ruling on summary judgment motions:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law.

Fed. R. Civ. P. 56(c). The critical question is whether a genuine issue of material fact exists. A genuine issue exists if there is sufficient evidence supporting the claimed factual dispute to require a choice between the parties' differing versions of the truth at trial. Morris v. Government Dev. Bank of Puerto Rico, 27 F.3d 746, 748 (1st Cir. 1994); LeBlanc v. Great Am. Ins. Co., 6 F.3d 836, 841 (1st Cir. 1993), cert. denied, 511 U.S. 1018 (1994). A fact is material if it might affect the outcome of the suit under the governing law. Morrissey v. Boston Five Cents Sav. Bank, 54 F.3d 27, 31 (1st Cir. 1995); Maldonado Denis v. Castillo-Rodríguez, 23 F.3d 576, 581 (1st Cir. 1994). On a motion for summary judgment, the court must view all evidence and related inferences in the light most favorable to the nonmoving party. See Springfield Terminal Ry. v. Canadian Pac. Ltd., 133 F.3d 103, 106 (1st Cir. 1997). "Even where motive or intent is at issue, 'summary

judgement may be appropriate if the nonmoving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation.'" Angulo-Alvarez v. Aponte De La Torre, 170 F.3d 246, 249 (1st Cir.), cert. denied, 120 S. Ct. 60 (1999) (citing Rivera-Cotto v. Rivera, 38 F.3d 611, 613 (1st Cir. 1994)).

In light of this standard, the facts of this case, construed in the light most favorable to the non-moving party, are set forth below.

**Factual Background**

Plaintiff Sierra, a member of the New Progressive Party ("NPP"), was a contract employee of the Municipality of Carolina from September 1979 to June 1997. Sierra's first contract with the Municipality in 1979 was signed by Carolina's former mayor, Roberto Iglesias of the NPP. (See Docket No. 1, Complaint ¶ 10.) For the next seventeen (17) years plaintiff Sierra entered into a series of successive one-year contracts in order to continue his employment relationship with the Municipality of Carolina. (See id. ¶ 11; Docket 41, Exhibits 1 and 2, Sierra's first and last contracts with the Municipality of Carolina, respectively.) Beginning in 1985, when Mayor Aponte took office as mayor of the Municipality of Carolina, plaintiff's contracts were signed by defendant Aponte. Plaintiff Sierra alleges that each consecutive year with the renewal of his contract his job responsibilities and monetary compensation increased. (See Docket No. 1, ¶ 12.) He further alleges that during the eighteen consecutive years in which he entered into an

employment contract he was treated and recognized as a regular municipal employee, and thus received all the benefits awarded to regular employees. (See Docket No. 1, ¶ 13.) Sierra's last employment contract with the Municipality of Carolina was dated July 1, 1996 and signed by Mayor Aponte. (See Docket 41, Exhibit 2.)

On April 18, 1997, plaintiff Sierra filed an administrative complaint with the "Junta de Apelaciones de Sistema de Administración de Personal" (hereinafter "JASAP"), alleging that the Municipality of Carolina had politically discriminated against him. (Docket No. 1, ¶ 15.) Said administrative agency issued an order to show cause on May 7, 1997. (Docket No. 1, ¶ 16.) On June 17, 1997, plaintiff was personally served with a letter from defendant Aponte stating that Sierra's employment contract would not be renewed. (Docket No. 1, ¶ 17.) Sierra worked for the Municipality of Carolina until June 30, 1997. (Docket No. 1, ¶ 18.)

Mr. Héctor Tirado was the Director of Housing and Community Development during 1987 through 1991, and as such plaintiff Sierra's supervisor for that time period. (Docket No. 41, Exhibit 5.) From his personal experience during those years and the years that followed, Mr. Tirado developed a negative perception of plaintiff Sierra's performance. (Docket No. 41, Exhibit 5.) From 1994 to 1996, Ms. Grizette Dávila was Director of Housing and Sierra's immediate supervisor.

## Analysis

### I. *Due Process Claim*

Sierra's first cause of action asserts that he had acquired a property interest in his contract with the Municipality of Carolina given that it had been renewed for eighteen consecutive years thus creating an expectation of continuity. Therefore, Sierra contends, defendants' actions deprived him of his property right in the continuity of his annual employment contract. In their summary judgment motion defendants assert that it is an uncontroverted fact that Sierra was a contract employee and as such did not have a property interest in his continued employment with the Municipality of Carolina.

The Due Process Clause of the Fifth and Fourteenth Amendments forbids any state from "depriv[ing] any person of life, liberty or property without due process of law." "The Clause guarantees the right to an informal hearing before the termination of employment that amounts to a property interest." Dávila-Alemán v. Feliciano-Melecio, 992 F. Supp. 91, 96 (D.P.R. 1997) (opinion supplemented January 22, 1998) (citing Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532 (1985)). It is "well established that a state employee's job is 'property' only if state law leads the employee to expect that he [or she] will be able to retain the job." Caro v. Aponte-Roque, 878 F.2d 1, 4 (1st Cir. 1989) (citing Cleveland Bd. of Educ. v. Loudermill, 470 U.S. at 538 (such expectations must be grounded not in the Constitution but in an independent source such as state law)). In other words, for

CIVIL 98-1668 (SEC) (JA)                           6

plaintiff Sierra's job to be protected by the procedural safeguards of the Due Process Clause, he must have had "a legitimate claim of entitlement to it." Board of Regents v. Roth, 408 U.S. 564 (1972); see, e.g., Campos-Orrego v. Rivera, 175 F.3d 89, 94 (1st Cir. 1999).

Under Puerto Rico law, a transitory employee, such as Sierra, "generally [does] not have a property interest in continued employment beyond [his] terms of appointment." Nieves-Villanueva v. Soto-Rivera, 133 F.3d 92, 94 (1st Cir. 1997) (citing Caro v. Aponte-Roque, 878 F.2d at 4-5; see also Meléndez v. Municipio de Arroyo, 96 J.T.S. 68, at 1077 (reaffirming that, as a matter of law, transitory employees generally have no "legitimate expectation" to a renewal of their contracts).

In his opposing motion Sierra suggests that the fact that his employment contract afforded him the same privileges and benefits enjoyed by regular employees should offer enough proof to support the contention that his contractual relationship with the Municipality was really a guise for what should have been a career position. In essence, Sierra argues that the Municipality created a parallel system of contract employees in order to avoid the creation of regular employment positions.

There are several problems with plaintiff Sierra's arguments. First, there is no evidence of systematic wrongdoing on the part of the Municipality. Plaintiff expects this court to find that the Municipality had an "illegal" parallel employment system based on

the allegation that Sierra could have been a regular employee of the Municipality rather than a contract employee. Furthermore, although the Municipality's practice might arguably seem to be bad public policy, it is nevertheless acceptable under state law. See, e.g., Meléndez v. Municipio de Arroyo, 96 J.T.S. 68, at 1077; see also Fermín Orta v. Pedro Padilla, 131 D.P.R. 227, 245 (1992).

Sierra's due process claim is meritless. It is undisputed that from 1979 up until 1996 Sierra entered into a series of successive employment contracts with the Municipality of Carolina. It is also undisputed that these contracts made it clear that the employment relationship had a specific duration, namely one-year. Indeed, it appears that Sierra negotiated and signed his contracts with the Municipality each year. A look at the last contract (Docket 41, Exhibit 2, clause 8) shows that there was a specific clause permitting termination upon notice. Contrary to Sierra's allegation, the "renewal of [his] contracts [for seventeen consecutive years] does not create a property interest in the continued renewal of his contracts. . . . Each year, both parties had to come together and determine that they wished to extend their contractual relationship. Each year they signed a one-year agreement. . . . The Court cannot infer that the contracts had a duration longer than [what] they clearly stated." See Dávila-Alemán v. Feliciano Melecio, 992 F. Supp. at 96.

In view of the aforementioned, I find that Sierra did not have a property interest in the continuation of his employment contract with the Municipality of Carolina. Therefore, plaintiff's procedural due process claim is hereby DISMISSED.

## II. First Amendment Claim

Sierra's second cause of action is based on the contention that the Municipality of Carolina's failure to renew his contract was due to his political beliefs (as a member of the NPP party) in violation of his First Amendment rights.

The First Amendment "prohibits the termination of [a] public employee because of [his or her] political affiliation unless 'the hiring authority can demonstrate that party affiliation is an appropriate requirement for the effective performance of the public office involved.'" Nieves-Villanueva v. Soto-Rivera, 133 F.3d at 97 (citing Branti v. Finkel, 445 U.S. 507, 518 (1980)). In the instant case there is no allegation by the defendants that Sierra's position required that he belong to a specific political party.

Whether or not Sierra had a "property interest" in the renewal of his employment contract is irrelevant to his First Amendment claim of political discrimination. "[T]he fact that a transitory employee does not have a reasonable expectation of renewal in his or her employment that would require due process protections does not defeat a First Amendment claim." Nieves-Villanueva v. Soto-Rivera, 133 F.3d at 97.

CIVIL 98-1668 (SEC) (JA)                    9

To establish a *prima facie* case of political discrimination, plaintiff Sierra must first "produce sufficient direct or circumstantial evidence from which a rational jury could find that political affiliation was a substantial or motivating factor behind the adverse employment action," i.e., the non-renewal of his employment contract. Rodríguez-Ríos v. Cordero, 138 F.3d 22, 24 (1st Cir. 1988); see also Acevedo-Díaz v. Aponte, 1 F.3d 62, 66 (1st Cir. 1993). "Once [Sierra] meets [that] threshold burden, the burden then shifts to the defendant-employer who must 'articulate a nondiscriminatory basis for the adverse employment action and prove by a preponderance of the evidence that it would have been taken without regard to plaintiff's political affiliation.'" Angulo-Alvarez v. Aponte De La Torre, 170 F.3d at 249 (citing Rodríguez-Ríos v. Cordero, 138 F.3d 22, 24 (1st Cir. 1988)).

It is important to note that in the context of civil rights violations, a plaintiff must "'outline facts sufficient to convey specific instances of unlawful discrimination.' . . . Put another way, a plaintiff may not prevail simply by asserting an inequity and tacking on the self-serving conclusion that the defendant was motivated by a discriminatory animus. The alleged facts must specifically identify the particular instance(s) of discriminatory treatment and, as a logical exercise, adequately support the thesis that the discrimination was unlawful. . . . Discrimination based on unprotected characteristics or garden-variety unfairness will not serve." Correa-Martínez v. Arrillaga-Beléndez, 903 F.2d 49, 53 (1st Cir. 1990) (citations omitted).

CIVIL 98-1668 (SEC) (JA)              10

Sierra makes several allegations in support of his First Amendment claim. First, he asserts that he is a member of the NPP party while co-defendant Aponte is the Vice-president of the PDP. Secondly, Sierra implies that given that 1996 was an election year, "January 1997 brought administration changes in various municipalities" and, in the Municipality of Carolina, an "across-the-board administrative reorganization" took place. (Docket No. 53, at 11.) In other words, plaintiff Sierra suggests that there was a "highly charged political atmosphere" in the Municipality at the time of the non-renewal of his employment contract. See Rodríguez-Ríos v. Cordero, 138 F.3d at 24. Finally, in his effort to bolster his claim of political discrimination, Sierra contends that the removal of his immediate supervisor in January of 1997, Ms. Grizette Dávila, "exposed him to direct political discrimination by his supervisors." (Docket No. 53, at 11.) Sierra further contends that the decision that suscitated the non-renewal of his contract was based on the negative recommendation given to plaintiff by Mr. Héctor Tirado. Sierra contends that said evaluation is probative of discriminatory animus, given that Tirado was plaintiff's supervisor back in 1988 and it was obvious that Tirado did not like plaintiff.

Plaintiff has not produce enough evidence in support of his contention that his political affiliation was the motivating factor behind the Municipality's decision not to renew his contract. The fact that Aponte and Sierra have different political affiliations is not enough to sustain Sierra's initial burden of persuasion in a political discrimination case.

See, e.g., Acevedo-Díaz v. Aponte, 1 F.3d at 66-67 (discussing the Mt. Healthy's burden-shifting mechanism applicable in First Amendment political discrimination cases).[2] Furthermore, there is no evidentiary support in the record for the allegation that there was a "politically charged atmosphere" during the last year of Sierra's contract. Mayor Aponte had been the mayor of the Municipality of Carolina since 1985, so the 1996 election did not bring about any significant changes in the Municipality's administration. Most importantly, Sierra's contract was renewed every year since Mayor Aponte took office in 1985 until the time of his discharge in 1997.

In addition, there is no shred of evidentiary support for plaintiff's allegation that the removal of Ms. Dávila as his immediate supervisor exposed him to any discrimination. Plaintiff fails to support this conclusory allegation with factual evidence of discrimatory animus against him. In fact, in her deposition, Dávila says that she does not believe that Sierra was fired for political reasons. (Docket No. 53, Exhibit E, Dávila's deposition, at 35.) True enough, Tirado, plaintiff's supervisor back in 1988, gave plaintiff a negative recommendation which might have in part contributed to the non-renewal of his contract. There is evidence in the record suggesting that Tirado had developed a negative perception of Sierra. Assuming, arguendo, that Tirado disliked Sierra and gave him an unfairly

---

[2] See Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 284, (1977).

CIVIL 98-1668 (SEC) (JA)                12

negative evaluation is still not probative of discriminatory animus. The law does not protect employees from unfair or unfounded adverse employment actions, but rather from actions motivated by discrimination. Given that Sierra has failed to present any evidence from which one might infer that political affiliation was the substantial or motivating factor in the non-renewal of his employment contract, I hereby DISMISS Sierra's second cause of action for political discrimination.[3]

### III. Retaliation

Sierra's third cause of action is a derivative of the political discrimination cause of action discussed above. Basically, Sierra asserts that the non-renewal of his employment contract further violated his First Amendment rights because it was in retaliation for his filing of a complaint in JASAP on April 18, 1997.

Sierra's retaliation claim falters at the outset. As exemplified in the above-mentioned section, Sierra has not presented enough evidence to support his claim that there is a causal connection between defendant's conduct (not to renew Sierra's contract) and plaintiff's political affiliation. The proximity between Sierra's filing of his complaint in JASAP

---

[3] In their motion for summary judgment, defendants have presented evidence in support of their contention that there were legitimate reasons for Sierra's dismissal. Some of that evidence, as Sierra correctly points out, is unsupported by specific references to the record as required by Local Rule 311.12. Nonetheless, I find this defect unconsequential given that plaintiff Sierra did not adduce enough evidence to shift the burden of production to the defendants under Mt. Healthy's analytical framework.

AO 72
(Rev. 8/82)

(April 18, 1997) and the non-renewal letter of June 17, 1997 standing alone is insufficient evidence in support of a claim of retaliation.

## CONCLUSION

In view of the aforementioned I hereby GRANT defendants' motion for summary judgment (Docket No. 41) in its entirety. Plaintiffs' complaint is therefore DISMISSED.

In San Juan, Puerto Rico, this 16th day of May, 2000.

JUSTO ARENAS
United States Magistrate Judge

(2)